# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **v.** } | Case No.: 5:15-cr-00055-MHH-HGD |
| } | |
| **ERIC SLOAN PARKER,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Chief Larry Muncey's motion for recusal. (Doc. 140). In his motion, Chief Muncey contends that the undersigned should not preside over the upcoming Rule 42 criminal contempt proceeding involving Chief Muncey and Captain Terrell Cook. Chief Muncey's motion raises two grounds for recusal under 28 U.S.C. § 455. First, Chief Muncey asserts the Court's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a); (Doc. 140, pp. 5–8). Second, Chief Muncey argues that recusal is required because the Court is "likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5)(iv); (Doc. 140, pp. 8–10). For the reasons discussed below, based on Eleventh Circuit precedent regarding recusal and on the record in this case, the Court denies the motion.

I. **<u>Impartiality</u>**

In support of his motion to recuse, Chief Muncey excerpts a statement that the Court made during a fact-finding investigation that the Court conducted during the first *Parker* trial and a statement that the Court made during a closed hearing regarding the publication of the transcripts from the fact-finding hearing.  The first, as the Court will explain in greater detail below, was a ruling on an evidentiary matter in the *Parker* trial.  The second was a denial of a request from counsel for Chief Muncey for additional time.  As a matter of law, neither statement provides a basis for recusal.

A. Rule 615 Violation

Chief Muncey contends that a "fully-informed, disinterested, objective, lay onlooker would need look no further than" the Court's statement that "[b]oth Captain Cook and Chief Muncey have violated Rule 615" to "reasonably question the Court's impartiality . . . ." (Doc. 140, p. 1; Doc. 77-2, 197).  The argument is self-defeating; no one could reasonably claim to be fully-informed after reading a single sentence culled from the hundreds of transcript pages that comprise the record in the *Parker* case.  Context makes all the difference.  As a matter of law, the Court is not bound to provide this context because Chief Muncey's motion rests on a flawed legal premise.  As a practical matter, the Court will summarize

the context omitted from the motion to recuse to dispel any appearance of impropriety that a selective presentation of the record potentially could generate.

As a matter of law, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Indeed, if a court's ruling could provide a basis for recusal, then every party on the losing end of a motion or a trial could move for recusal. "The bias or prejudice 'must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case.'" *United States v. Amedeo*, 487 F.3d 823, 828–29 (11th Cir. 2007) (quoting *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990)).

As mentioned, the Court made the statement that Chief Muncey cites as part of a fact-finding investigation that the Court conducted during the first *Parker* trial, and the finding was based entirely on information that the Court learned through evidence presented during the *Parker* case. Because Chief Muncey has not alleged bias that meets the threshold for recusal, his motion is deficient as a matter of law.

3

The motion is equally deficient on the record in this case. When a party asserts a proper ground for recusal, "the recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 924 (2004) (internal quotation marks and emphasis omitted). The Court already has set out at length the series of events that led to and followed the Court's statement that Chief Muncey "violated the Court's Rule 615 Order." (Doc. 140, p. 6). The Court will not repeat the full narrative here; the discussion appears at Document 125, pp. 4–20, in Document 126, and in the record citations contained in Documents 125 and 126.[1] For purposes of this opinion, the Court will highlight a few important points.

The Court first considered whether Chief Muncey had violated Federal Rule of Evidence 615 to address allegations that Chief Muncey, though under a trial subpoena, had read accounts of testimony in the first *Parker* trial and had contacted witnesses during the *Parker* trial to question the witnesses about their

---

[1] The Court provided the first description of these events on January 29, 2016 in Document 118. The Court updated Doc. 118 by entering Doc. 125 on February 24, 2016 after full record cites were available in CM/ECF, the Court's electronic record. The Court also entered Document 126 on February 24, 2016. The underlying published transcripts have been in the record for more than one month. Moreover, the Court gave Chief Muncey and his attorney (and Captain Cook and his attorney) copies of the sealed transcripts of the evidence from the closed hearing from the first *Parker* trial on more than one occasion following the first *Parker* trial, so that Chief Muncey could review the evidence and participate in discussions with counsel for the Government and counsel for Mr. Parker about publication of the transcripts from the closed evidentiary proceeding. The record reveals the efforts that the Court made to protect Chief Muncey's right to fair process from the days leading to the closed evidentiary hearing up through the publication of the sealed transcripts.

trial testimony. Rule 615 is designed to "exercise[] a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses" and to "aid[] in detecting testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976); *see* Fed. R. Evid. 615; (Doc. 72-2; Doc. 77-2, pp. 4–209). After discussing the allegations with counsel for the Government and Mr. Parker, the Court convened a closed hearing to gather evidence from members of the Madison Police Department and other witnesses to assess the validity of the allegations and to determine the extent to which the alleged conduct may have impacted Mr. Parker's criminal trial. (Doc. 72-2; Doc. 77-2, pp. 4–209).[2]

Counsel for Chief Muncey was present at the beginning of the closed evidentiary hearing. The Court heard argument from all parties, including counsel for Chief Muncey, and ultimately decided to exclude Chief Muncey, Captain Cook, and Sergeant Anderson from the courtroom. Before the officers and their attorneys left the courtroom, the Court explained its rationale for excluding the officers, advised the officers of their rights, and listed the criminal charges that the officers potentially faced.

---

[2] Without getting bogged down in minutia, it is worth noting that the Court received the allegations of witness tampering and a Rule 615 violation on the morning of Saturday, September 5, 2015. By the end of the day, after a series of telephone conferences with a collection of attorneys and the courtroom deputy, the Court had scheduled an evidentiary hearing; taken steps to preserve email evidence and secure witnesses; and arranged for Chief Muncey, Captain Cook, and Sergeant Anderson to have counsel present when the hearing began on September 8, 2015, following the Labor Day holiday.

As the Court stated throughout the closed hearing, both to counsel for Chief Muncey and Captain Cook and to counsel for the Government and Mr. Parker, the Court's aim was to determine whether the conduct alleged had occurred, and if so, what effect the conduct might have on the *Parker* trial. If evidence gathered in the fact-finding hearing supported the allegations that the Court received, then the Court would have to determine whether any witness's testimony had been impacted by the conduct. The Court also would have to determine whether Chief Muncey or Captain Cook violated the Court's Rule 615 order because if the evidence indicated a violation, then the conduct may have compromised Mr. Parker's ability to call Chief Muncey and Captain Cook as witnesses, possibly warranting relief either by way of a jury instruction or an admission of evidence that otherwise might not be relevant. (Doc. 77-2, pp. 204–05).

After hearing from counsel for Chief Muncey, members of the Madison Police Department, and others during the closed proceeding, the Court addressed "what relief, if any, . . . Officer Parker [was] entitled to based on the information that the Court [had] heard . . . ." (Doc. 77-2, p. 191). As a legal prerequisite for examining what relief, if any, Mr. Parker might be entitled to receive in his criminal trial based on the conduct described in the closed hearing, the Court found that "Captain Cook and Chief Muncey [had] violated Rule 615." (Doc. 77-2, p. 197).

There is a significant legal distinction between the finding that the Court made during the *Parker* trial and the findings that the Court must make during a Rule 42 contempt proceeding. It is the distinction between remedial and punitive measures— *i.e.* the difference between civil and criminal contempt. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 299–300 (1947) (discussing the coercive and remedial nature of civil contempt and the punitive nature of criminal contempt); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911) ("It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment Is [sic] remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.").

The options that the Court considered after receiving evidence during the closed proceeding—whether to hold Chief Muncey and Captain Cook in contempt and instruct the jury accordingly, allow cross examination relating to the contempt, or disallow testimony from Chief Muncey and Captain Cook—are remedial in nature as explained by a host of Eleventh Circuit opinions. The remedies are designed to provide evidentiary relief to a party whose case is impacted by a violation of a court order. (Doc. 77-2, p. 198). With respect to conduct that occurs outside of the Court's presence, a finding that provides the basis for a civil

contempt remedy is not a finding of contempt beyond a reasonable doubt, the standard for criminal contempt. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *see also United States v. Columbia Broad. Sys., Inc.*, 497 F.2d 107, 109 (5th Cir. 1974) (A "civil contempt . . . could be proved by preponderance of the evidence.").

Based on the evidence that the Court received in the closed hearing, the Court found that "what [had] transpired require[d] referral for further investigation," not that Chief Muncey or Captain Cook was guilty of any crime. (Doc. 77-2, p. 200).  Counsel for both Mr. Parker and the Government understood that the Court's finding was intended to safeguard the integrity of the *Parker* trial and was not a finding of criminal contempt. (Doc. 77-2, pp. 198–99 ("Now I agree with you that, you know, you would have to proceed in a separate contempt hearing and go through that process before any specific sanctions could be brought against either of those two . . . ."); Doc. 77-2, p. 202 ("[T]he Court's findings or opinions . . . amount to . . . a finding that they should be turned over for investigation and prosecution.")).  In short, the Court's finding that Chief Muncey and Captain Cook violated Rule 615 concerned only the Court's civil contempt power.  The finding during the *Parker* trial essentially is the equivalent of the probable cause finding that a court must make to institute a Rule 42 proceeding. In the context of the Rule 42 proceeding in this case, the Court has made only a

probable cause finding with respect to a Rule 615 violation, and that is only one of three elements of a criminal contempt charge. As the Court stated in the show cause order in this case, the prosecutor bears the burden of proof beyond a reasonable doubt for each element. (*See* Doc. 126 for a discussion of the elements of criminal contempt and the burden of proof).

In that regard, in his motion to recuse, Chief Muncey quotes the following excerpt from a footnote in the Court's show cause order: "Chief Muncey and Captain Cook will have the opportunity to demonstrate that the evidence on which the Court rested its finding was not reliable or was incomplete." (Doc. 126, p. 10 n.13; Doc. 140, pp. 5, 7–8). Again, Chief Muncey quotes only a small portion of the footnote and omits the balance of the Court's discussion. The excerpt that Chief Muncey cites is preceded by the statement that the Court's Rule 615 finding during the closed *Parker* hearing was made "for purposes of examining the evidentiary consequences for Mr. Parker's trial of the apparent violation." (Doc. 126, p. 10 n.13). The Court continued: "On the evidence currently before the Court, the finding that Chief Muncey and Captain Cook violated the sequestration order is consistent with Eleventh Circuit precedent; however, in the Rule 42 hearing, Chief Muncey and Captain Cook will have the opportunity to demonstrate that the evidence on which the Court rested its finding was not reliable or was incomplete." (Doc. 126, p. 10 n.13).

The Court was trying to make two points in the footnote. First, the Court was confirming a legal proposition discussed during the closed proceeding. During that proceeding, the Court acknowledged that it had not had the opportunity to investigate potential distinctions between hearing witness testimony, which Rule 615 clearly prohibits, and reading witness testimony—distinctions that were relevant because the Court's findings in the closed hearing rested in large part on email and text messages in which Chief Muncey stated that he was following the news accounts of witness testimony and reading media blogs of witness testimony. (Doc. 77-2, pp. 51, 53–54, 83, 105, 156, 165–66, 171, 173–74 (suggesting Chief Muncey had read media blogs of witness testimony during the first *Parker* trial)). At the beginning of the closed hearing, counsel for Chief Muncey admitted that Chief Muncey sent email messages relating to witnesses' testimony. Counsel stated:

> I have had some opportunity to speak to some of the attorneys from the City of Madison this weekend, who alerted me to this, and to speak with the chief. And it is my understanding that the Court has a concern over some e-mails sent by Chief Muncey. And I am not going to bother to say allegedly sent; he acknowledges that he sent a couple of e-mails that relate to some of the witnesses in the case.

(Doc. 77-2, p. 27).[3]  One of those email messages reads as follows:

---

[3] This admission is significant and points to a gap in the legal analysis in the motion to recuse. In a criminal proceeding, the prosecutor bears the burden of proof; however, when a party admits a fact, that fact is deemed established, and the prosecution is relieved of the burden of proving the fact beyond a reasonable doubt. *U.S. v. Kleinschmidt*, 596 F.2d 133, 136 (5th Cir. 1979) (holding that a stipulation of fact "is binding" and can by itself "provide sufficient evidence to

> Officers:
>
> According to WHNT 19 and the Huntsville Times, each of you testified under oath that Madison City Police Policy supported Parker's use of force on Mr. Patel, and in the same situation, you would have done the same. Please provide me with a written statement explaining if theses [sic] reports are correct; if they are not correct, explain what you did say.
>
> Send the reports directly to me (email) within 24 Hours of Parker's case being decided, not before.
>
> Professionally,
> Chief, Larry R. Muncey.

(Doc. 77-2, pp. 60–61, 68, 73, 78, 83). The Court explained to counsel for the Government and counsel for Mr. Parker that (in the research it had done over the weekend before the hearing), it had "not seen any case law that discusses what the significance is in the context of a 615 analysis of reading media blogs of testimony

---

satisfy [the] elements" of a crime); *U.S. v. Ross*, 334 Fed. Appx. 317 (11th Cir. 2009) (affirming conviction in bench trial where judge accepted "uncontested evidence" that was sufficient to support a guilty verdict); *U.S. v. King*, 267 Fed. Appx. 851, 852 (11th Cir. 2008) ("The prosecution established beyond a reasonable doubt the first and third elements of the Count 3 offense through the parties' stipulation.").

As explained in the Court's show cause order, the evidence in the sealed proceeding indicated that Chief Muncey and Captain Cook sent a number of email and text messages that are pertinent to the Court's probable cause finding. (Doc. 126, pp. 8–9). In addition to the email message that appears in this opinion, the Court heard evidence regarding an email that Chief Muncey allegedly sent to Sergeant Anderson during the *Parker* trial in which Chief Muncey asked: "how is it going?" (Doc. 77-2, p. 155). A subsequent text message from Chief Muncey to Sergeant Anderson states: "We are reading the WHNT-19 blogs." (Doc. 77-2, p. 156; Doc. 126, p. 9). The probable cause evidence indicates that the blogs were virtually verbatim accounts of trial testimony.

Before the Court hears evidence in the contempt proceeding, the Court intends to give counsel for Chief Muncey and Captain Cook the opportunity to address the breadth of Chief Muncey's admission and the impact that it may have on the prosecution's burden of proof with respect to the criminal contempt charge.

versus individuals discussing testimony," but the Court stated that it did not believe that the Eleventh Circuit would find a meaningful distinction between reading testimony and discussing testimony.  (Doc. 77-2, pp. 188–89).  Following the sealed proceedings, the Court reviewed the relevant case law and determined that "the finding that Chief Muncey and Captain Cook violated the sequestration order is consistent with Eleventh Circuit precedent . . . ."  (Doc. 126, p. 10 n.13; Doc. 126, pp. 7–8 (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981) ("The court properly held that providing a witness daily copy constitutes a violation of rule 615.");[4] *United States v. Jimenez*, 780 F.2d 975, 980 n.7 (11th Cir. 1986) ("As this circuit held in *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981), there is no difference between reading and hearing testimony for purposes of Rule 615.  Either action can violate a sequestration order.").

The second point that the Court was trying to make is more subtle, and Chief Muncey fairly points out that the Court's wording was veiled.  In stating that Chief Muncey and Captain Cook could challenge the finding that the Court made during the closed proceeding, the Court simply was acknowledging that if the Court finds at the conclusion of the Rule 42 proceeding that neither Chief Muncey nor Captain Cook is guilty of criminal contempt, Chief Muncey and Captain Cook still may

---

[4] *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

want to challenge the findings that the Court made during the *Parker* trial because those findings potentially may impact the officers' employment and their reputations. Neither Chief Muncey nor Captain Cook must do so; the Court simply was trying to acknowledge that counsel might want to address the issue.

With that explanation, the Court returns to the fundamental flaw in the motion to recuse. Chief Muncey's arguments all pertain to Court rulings. Chief Muncey did not ask the Court for clarification of the rulings. He did not request a hearing to discuss the rulings. He did not file an objection to the language in the show cause order that he cites as a basis for his motion to recuse. He leapfrogged over all of these options and filed a motion to recuse. As the Eleventh Circuit has held, this is not a proper use of a motion to recuse. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) ("Yet, a recusal motion is an improper vehicle to dispute disagreeable adverse rulings. It is a clear abuse of such a pleading.").

B. Fifth Amendment Privilege

In support of his motion for recusal, Chief Muncey also argues that during a conference on January 20, 2016 the Court improperly "placed a duty or obligation upon Muncey to revoke his invocation of the Fifth Amendment and 'come forward.'" (Doc. 140, p. 8; *see also* Doc. 140, p. 4). Counsel for Chief Muncey cited for this proposition a statement that the Court made during a closed hearing,

the transcript of which remains under seal. Before publishing the statement, Chief Muncey did not ask the Court to lift the seal.

Although the Court could treat Chief Muncey's use of the sealed transcript as a waiver of the seal so that the Court could publish the transcript and explain all of the facts surrounding the statement, counsel for Captain Cook requested the seal, and Chief Muncey joined in the request. Having granted the request, the Court may not violate the seal to respond to Chief Muncey's motion.[5] The Court can only say that at the beginning of the January 20, 2016 hearing, counsel for Chief Muncey made remarks about the circumstances that led Chief Muncey to invoke the Fifth Amendment. Later in the hearing, as the Court discussed the timing for release of an opinion concerning publication of the transcripts of the closed *Parker* hearings and other orders that the Court was contemplating, counsel for Chief Muncey asked the Court to delay action so that he could consult with his client. Based on the entirety of the conversation, the Court understood that counsel for Chief Muncey might want to advise Chief Muncey to speak to the Court. Perhaps the Court read too much into counsel's statement. Either way, the Court simply refused counsel's request for additional time.

---

[5] Because Captain Cook is a party to the Rule 42 proceeding, the Court cannot ask him for permission to lift the seal. As a defendant, Captain Cook would feel that he has no choice but to agree. It would be improper for the Court to make such a request.

Chief Muncey characterizes the Court's unwillingness to further delay the publication of the *Parker* transcript and the consequences that would follow as an improper effort to pressure Chief Muncey to abandon his right against self-incrimination.  (Doc. 140, p. 8).  Chief Muncey offers "[a]n indication of an expectation that someone who has had unspecified allegations levied against them would or should 'come forward' to explain themselves" as evidence of the Court's partiality.  (Doc. 140, p. 8).  The Court had no such expectation; the Court simply understood counsel to be requesting an opportunity, a request that the Court denied.  The Court understands that counsel for Chief Muncey hoped that the resolution of the charge against Mr. Parker would terminate all collateral matters, but the Court made clear early on that it would not address proceedings regarding Chief Muncey and Captain Cook until after the *Parker* proceedings concluded.  The Court's decision to move forward with a Rule 42 proceeding is not evidence of impartiality.  If it were, no court could issue a show cause order on a charge of criminal contempt concerning the court's perceived violation of one of its orders.

II.     <u>Material Witness</u>

Chief Muncey contends that he may call the undersigned as a witness to examine "whether the Court or counsel for the United States advised Muncey of his obligations under FED. R. EVID. 615."  (Doc. 140, p. 9).  If a judicial officer is

15

"likely to be a material witness in the proceeding," recusal is required. 28 U.S.C. § 455(b)(5)(iv).

Federal Rule of Evidence 605 prohibits a judge from testifying as a witness at trial, and "a judge is not required to recuse [herself] so that [she] can testify." *In re Evergreen Sec., Ltd.*, 570 F.3d at 1278. In general, testimony from a judge is appropriate only when the judge possesses "*factual* knowledge that [is] highly pertinent to" the case at hand and the judge represents "the only possible source of testimony on that knowledge." *See United States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978) (emphasis added); *United States v. Battle*, 235 F. Supp. 2d 1301, 1349–50 (N.D. Ga. 2001). Parties may not seek "to probe the mental processes" of a judicial officer. *United States v. Morgan*, 313 U.S. 409, 422 (1941).

The testimony sought by Chief Muncey regarding whether he was advised of his obligations under Rule 615 is not uniquely within the knowledge of the Court. Extensive transcripts exist of the pretrial proceedings in *Parker*, the first trial, and the close evidentiary proceedings, and other witnesses are available to Chief Muncey to explore the issue. (*See, e.g.*, Docs. 47, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 77). To the extent Chief Muncey might seek to inquire into the Court's impression of Chief Muncey's understanding of Rule 615, such an inquiry would be inappropriate. The Court already has described in the show cause order

information from the record concerning the Rule 615 order at issue. (Doc. 126, pp. 6–7).

Therefore, in compliance with Federal Rule of Evidence 605, the Court will not testify in the criminal contempt proceedings against Chief Muncey and Captain Cook. Under 28 U.S.C. § 455(b)(5)(iv), the Court need not recuse.

### III. Conclusion

Chief Muncey's attempt to cast as extrajudicial bias the Court's awareness of the circumstances surrounding the alleged Rule 615 violation fails. Impartiality does not the demand ignorance. Indeed, a criminal contempt proceeding necessarily relates to a court's preliminary, probable cause finding that the defendant violated a court order. "The judge whose orders were allegedly violated has a keener interest in the outcome" of the proceeding, but that interest does not equate with bias, and it does not warrant recusal. *United States v. Columbia Broad. Sys., Inc.*, 497 F.2d 107, 109 (5th Cir. 1974). The Court has made a probable cause finding and nothing more. That finding does not provide a basis for recusal. *See McWhorter*, 906 F.2d at 678 (To serve as a basis for recusal, the alleged bias "must derive from something other than that which the judge learned by participating in the case."). The Court will fulfill its "obligation . . . not to recuse" because "there is no occasion . . . to do so . . . ." *In re Moody*, 755 F.3d

891, 895 (11th Cir. 2014) (internal quotation marks omitted) (quoting *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)).

Accordingly, the Court **DENIES** Chief Muncey's motion to recuse.

**DONE** and **ORDERED** this April 12, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE